# RAMAPO WATER COMPANY *v.* CITY OF NEW YORK.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 715.   Argued February 24, 1915.—Decided March 8, 1915.

Where the constitution of the State reserves the right so to do, the charter of a corporation may be repealed without impairing the obligations of a contract. *Calder* v. *Michigan,* 218 U. S. 591.

In the absence of a specific decision of the highest court of the State to that effect, this court will not construe a statute authorizing a water supply corporation to exercise eminent domain under the provisions of the Railroad Act as giving to that corporation a vested right to exclude the rest of the world from whatever watersheds it chooses for an unlimited period and one that cannot be impaired by subsequent legislation simply by filing a map.

The Railroad Act of New York requires a corporation intending to exercise eminent domain not only to file maps of the property to be taken but also to file written notice to the occupants thereof and the mere filing of the map does not create rights against the State.

The legislation of the State of New York of 1905 empowering the City of New York to acquire lands for its new water supply is not unconstitutional as impairing the obligation of the contract of the charter rights of the plaintiff in error in this case or depriving it of its property without due process of law under the act authorizing

it to acquire property in the same watershed under the provisions of the Railroad Act, it appearing that no proceedings for such acquisition had ever been taken beyond the filing of a map.

THE facts, which involve the constitutionality under the impairment of obligation and due process clauses of the Federal Constitution of legislation of the State of New York in regard to the new water supply for the City of New York, are stated in the opinion.

*Mr. Carroll G. Walter,* with whom *Mr. Walter C. Noyes* was on the brief, for appellant:

The bill having alleged the existence of a contract and its impairment and the possession of property and its deprivation without due process of law, a case arising under the United States Constitution was presented, and the District Court had jurisdiction notwithstanding the lack of diversity of citizenship.

The bill shows on its face that the plaintiff acquired, by grant from the State, a vested right and franchise to utilize the watersheds of the Esopus, Catskill, Schoharie and Rondout Creeks for the purpose of constructing and maintaining a water works system, and to supply water from these sources to the various municipalities of the State.

The franchise so acquired by the plaintiff constitutes a contract and a vested property right protected by the Federal Constitution, and was not destroyed by the repealing acts mentioned in the bill.

The acts and proceedings of the defendants, done under color of authority of state laws, constitute an impairment of the plaintiff's contracts and a taking of its property without due process of law.

The defendants have no "special authority from the legislature" to take the lands and waters to which the plaintiff's franchise relates, and the legislature has not

authorized those lands to be devoted to "some other public use."

    Numerous authorities sustain these contentions.


*Mr. Louis C. White,* with whom *Mr. Frank L. Polk* was on the brief, for appellees:

All parties to the suit are citizens of the State of New York, and unless the bill of complaint shows on its face some question arising under the Constitution or laws of the United States, the court below was without jurisdiction and the appeal was properly dismissed.

The bill of complaint shows on its face that the plaintiff had no contract, the obligation of which was impaired, nor any property of which it was deprived, by the legislation and acts complained of.

Chapter 724 of the Laws of 1905 makes ample provision for the ascertainment and payment of compensation to every owner or person interested in any land taken by the City of New York under that act.

The decree should be affirmed and the certified question answered in the negative.


MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity to restrain the City of New York and the Board of Water Supply from proceeding further with the enterprise upon which they already had spent over one hundred and twenty-nine million of dollars in order to provide the city with a supply of water. The ground is as follows:

The plaintiff (appellant) originally was incorporated under a general act, in 1887, for the purpose of storing and supplying water for mining, domestic, manufacturing, municipal and agricultural purposes, to cities, other corporations, and persons. By virtue of other statutes it had the right to acquire title to land and water for its

corporate purposes in the manner specified by the General Railroad Act, ch. 140, Laws of 1850; and it spent money, had surveys made, filed some maps, and acquired options for the purchase of real estate in pursuance of the ends for which it was formed.

. In 1890 the laws under which the plaintiff was incorporated were repealed, but thereafter ch. 985 of the Laws of 1895 reiterated the grant of the powers specified in the charter and authorized the corporation to acquire 'in the same manner specified and required in' the above mentioned Railroad Act 'such lands and waters along the watershed of the Ramapo, and along such other watersheds and their tributaries, as may be suitable for the purpose of accumulating and storing the waters thereof.' The corporation is to make a map of the route adopted and the land to be taken and file the same in the office of the Clerk of the County through which the route runs or in which the land is situate. It is to give written notice to all occupants of lands so designated and the occupants and owners are given time to apply for the appointment of commissioners, by a petition stating the objections to the route designated and the route to which it is proposed to alter the same, with elaborate provisions for notice and hearing and appeal to the Supreme Court, which 'may affirm the route proposed by the corporation or may adopt that proposed by the petitioner.' Under this act the corporation filed maps covering substantially the whole of the drainage areas or watersheds of the Esopus, Catskill, Schoharie, and Rondout creeks, about a thousand square miles (being the same lands that the City now has taken), acquired options for purchase of land, and spent large sums.

. Before this time, it is alleged, the courts of New York had declared that the filing of maps under the Railroad Law of New York gave to the corporation filing them a vested right to the exclusive use of the lands covered by

the maps. The plaintiff in 1898 made an offer to the City of New York to furnish it with water from the region in question, but, pending investigation by the City, in 1901 the act of 1895 giving the plaintiff its rights was repealed by an act alleged to be unconstitutional and void. In 1905 the City was empowered itself to acquire new water supplies, machinery was provided to that end, and the City has gone ahead as we have stated, without regard to the plaintiff's alleged rights. The plaintiff sets up that the laws under which the City acts impair the obligation of contracts between it and the State and take its property without due process of law, contrary to Article I, § 10, and the Fourteenth Amendment of the Constitution of the United States. An answer was filed, but the defendants also moved to dismiss for want of jurisdiction on the ground that all the parties were citizens of New York and that the case involved no question under the Constitution. The District Court, being of opinion that the bill disclosed no such rights as the plaintiff claimed and therefore showed no real constitutional ground, dismissed the bill.

The plaintiff's argument, while admitting that it must appear that there is a substantial question under the Constitution, and that the formal averment of such a question is not enough, makes a rather useless attack upon the application of that principle in *Underground Railroad* v. *New York*, 193 U. S. 416. If it is apparent that the bill is groundless, it does not matter very much whether the dismissal purports to be for want of jurisdiction or on the merits. But we are of opinion that the groundlessness of the bill is so obvious that it fairly may be said that no substantial constitutional question appears.

The charter of the company of course could be repealed without impairing the obligation of a contract as the right was reserved, as usual, in the constitution of the State. *Calder* v. *Michigan*, 218 U. S. 591. The only matter de-

serving a word is the claim that .by filing the maps the
corporation gained rights that survive.  As to that, in the
first place it would require stronger language than any
that is found in the act of 1895 to lead us to believe that
the legislature meant that the rights conferred with regard
to routes should be extended over any or all of the water-
sheds in the State of which the plaintiff might see fit to
file a map.   The direction to file a map of the route
adopted and the land to be taken, coupled with the other
provisions that we have recited, appears to us to have in
view the route and the land needed for the route, and only
that, not the thousand square miles that the plaintiff
claims.  In the next place the plaintiff had given no notice
to anybody and notice to occupants of the land is a con-
dition to the existence of any right.  And finally it is held
in New York and affirmed by this court, that no such
right even for the route of a railroad is created as against
the State by the filing of a map.  *People* v. *Adirondack Ry.*,
160 N. Y. 225, 242–247; 176 U. S. 335, 346.  *Underground
R. R.* v. *New York*, 193 U. S. 416, 428.

We appreciate the argument that although the cor-
poration may have had no lien on the land or right as
against the sovereign power, it had a right as against all
subordinate bodies to exclude them from the lands of its
choice, that the decisions had declared this right to be
vested and indestructible except by legitimate exercise
of the power of eminent domain, that it had spent money
and taken action on the faith of them, and that a later
decision cannot take away the right.  But the cases relied
upon are too remote for the confident application of that
doctrine if there were no other objections to it.  They
concern the effect of filing a map of a railroad route and
only when coupled with notice to the landowners con-
cerned.  We should be more inclined to follow *Sauer* v.
*New York*, 206 U. S. 536.  *Moore-Mansfield Construction
Co.* v. *Electrical Installation Co.*, 234 U. S. 619, 626.  *Wil-*

*loughby* v. *Chicago,* 235 U. S. 45.   But as we have said, nothing short of a specific decision of the Court of Appeals would make us believe that the act of 1895 gave to the plaintiff, without notice to landowners or other preliminary, a vested right, seemingly unlimited in time, to exclude the rest of the world from whatever watersheds it chose, simply by filing a map.

*Decree affirmed.*