**James Durelle BOLES and Chlorine D. Boles**

v.

**BANK OF KNOXVILLE et al.**

**Civ. A. No. 6735.**

United States District Court
E. D. Tennessee, N. D.

Oct. 10, 1969.

James Durelle Boles, in pro. per.

Clyde W. Key, Key & Lee, William P. O'Neil, O'Neil, Jarvis, Parker & Williamson, Knoxville, Tenn., for defendants.

MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

James Durelle Boles and his wife, Chlorine, have sued the defendants for a deprivation of rights. The plaintiffs assert jurisdiction under the Fourteenth Amendment, the Civil Rights Acts (specifically 42 U.S.C. §§ 1983, 1985 and 1986) and 28 U.S.C. § 1343. All the defendants have moved to dismiss the complaint because it does not state a claim upon which any relief can be granted. All of the defendants, with the exception of Hamilton S. Burnett, the Chief Justice of the Tennessee Supreme Court, also claim this Court has no jurisdiction to hear the case. There is no diversity of citizenship between the parties. Consequently, if the case cannot be sustained under the Fourteenth Amendment or the above statutes, the complaint must be dismissed.

The complaint consists of some sixteen pages. The complaint will be read in the manner most favorable to the plaintiffs. Also, plaintiffs, who are personally prosecuting this suit, are not lawyers.

The events that preceded this suit are involved and difficult to summarize. Prior to July, 1960, Mr. Boles operated an automobile dealership in Knox County, Tennessee. Mr. Boles and the defendant Bank of Knoxville were parties to a floor-plan financing agreement. Mrs. Boles had furnished additional collateral. In July, 1960, the Bank filed a bill in the Knox County Chancery Court placing Mr. Boles in receivership. The defendant, Robert M. Child, was appointed receiver of Mr. Boles' assets and Mrs. Boles' additional collateral. The defendant, H. T. Kern, was appointed to give Mr. Child legal assistance. Subsequently, Mr. Child filed an accounting with the Chancellor. Plaintiffs made numerous exceptions to these records, and a master was appointed to study and report upon the exceptions. The master's report of February 3, 1964, adopted some of the plaintiffs' exceptions. By early 1965, plaintiffs became very displeased about the failure of the Chancellor to render a decision upon the master's report. Plaintiffs filed petitions for mandamus with the Clerk of the Tennessee Supreme Court and Chief Justice Burnett. A hearing was set for March 5, 1965. On March 4, 1965, the Chancellor filed a memorandum affirming the master's report and asked that a decree in conformity with his ruling be submitted. A decree was submitted; the Chancellor accepted it; and all parties excepted to the decree. In its decision, the Tennessee Court of Appeals remanded the suit to the Knox County Chancery Court. The Chancellor who had initially heard the suit recused himself and his successor heard further proceedings. The new Chancellor then entered a decree adverse to plaintiffs in this action. At this point the complaint alludes to an evidentiary hearing of April, 1969. An attorney for one of the defendants stated in oral argument that plaintiffs have another suit dealing with the same subject matter now pending before the Court of Appeals. Plaintiffs allege that the irregularities in the state court proceedings establish "a pattern of violation of procedural matters at all levels of the State Courts [and show] that neither of the plaintiffs will be able to secure justice in any State Court * * * "

Specifically, plaintiffs allege that the bill creating the receivership was fraudulent; that the objective of the bill was to allow the Bank and its officers and agents to plunder the receivership assets and deprive plaintiffs of their civil rights. Plaintiffs allege examples of the tortious and criminal administration of the receivership by Robert M. Child, the receiver, his court-appointed legal advisor, H. T. Kern, and officers and agents of the Bank. Plaintiffs further allege that all the defendants conspired to violate their civil rights by acting upon or in concert with the receiver or his appointed lawyer. Plaintiffs allege that the lawyers involved in the proceedings also acted to deprive them of their civil rights, and that Chief Justice Burnett is also liable for his misuse and maladministration of the court system of Tennessee.

Lastly, plaintiffs allege that all of the defendants, except the Bank, knew of the conspiracy or acts to deprive plaintiffs of their civil rights, had the power to prevent such acts and failed to act.

Defendants base their motion upon Boles v. Cox, 252 F.Supp. 173, in this Court on February 24, 1966 (hereafter No. 5466) and James Durelle Boles, Sr. v. Cox, an unpublished memorandum of this Court in Civil Action No. 5749 of December 21, 1966 (hereafter No. 5749). The Court notes that the parties in the three suits are similar.[1] After comparing this complaint with the amended complaints in No. 5466 and No. 5749, the Court observes that plaintiffs' problems have all arisen since the filing of the receivership bill. The Court believes that plaintiffs are rehashing old disputes. In No. 5466 "the Court determined that once Judge Shumate was removed from the case, as immune to suit, there was left in the case only an allegation of fraud perpetrated by the various defendants upon the plaintiff and that, with Judge Shumate out, there was no basis for a claim of deprivation of rights under color of any state law." (p. 5 of No. 5749)

In No. 5749, the Court held:

" * * * jurisdiction to try this case fails for three reasons: (1) The persons alleged to have made an arbitrary use of State power are not the defendants, but judges of three separate courts of the State. No one, who could conceivably under the allegations here be guilty of arbitrary action, is a party to the lawsuit. Defendants are charged with negligence only. (2) In the first Boles case we pointed out that except in the clear absence of all jurisdiction, the judge of a court is immune to a civil action for damages for acts performed in the course of his official function. It is inconceivable that defendants could be held responsible for acts for which the judges themselves are immune. (3) Finally, assuming arguendo defendants could in an action for damages for negligence be liable for arbitrary action of another, the defendant is, under long-established law, liable only for the foreseeable consequences of his negligence. It is likewise inconceivable that any person could, on the facts alleged here, foresee that judges sworn to uphold the laws and Constitution of the State would repudiate their oaths and act in an arbitrary and willful manner. See Gabbard v. Rose, 359 F.2d 182 (C.A. 6); Haldane v. Chagnon, 345 F.2d 601." (pp. 6, 7 of No. 5749)

The only additional averments in this complaint relate to the developments in the state courts since 1966 and the continuing failure of the defendants to attempt to stop a known conspiracy. The Court seriously doubts if this complaint states a different claim for relief than those claims in Nos. 5466 and 5749.

The complaint in No. 5466 was also dismissed because it was felt that plaintiff only sought a relitigation of issues which were decided adversely in a state court.

I.

| No. 5466 | No. 5749 | No. 6735 |
|---|---|---|
| Chlorine D. Boles | James Durelle Boles, Sr. | James Durelle Boles, Sr. and Chlorine D. Boles |
| v. | v. | v. |
| John C. Cox, Sr. | John C. Cox, Sr. | Bank of Knoxville |
| Frank F. Venable, Sr. | Frank F. Venable, Sr. | John C. Cox, Sr. |
| John C. Cox, Jr. | John C. Cox, Jr. | Frank F. Venable, Sr. |
| Thad S. Cox | Thad S. Cox | John C. Cox, Jr. |
| Bank of Knoxville | Bank of Knoxville | Thad S. Cox |
| Myron R. Ely | Myron Ely | Myron R. Ely |
| Robert M. Child | | Robert M. Child |
| H. T. Kern | | H. T. Kern |
| Ruth M. Clark | | Clyde S. Key |
| Sam Douglas | | W. P. O'Neil |
| Joe Bacon | | Hamilton S. Burnett |
| A. G. Shumate | | |

It was stated: "[It is] a well-recognized general rule that it is not within the province of a federal court to review state court decisions." That principle also controls this complaint.

In Moffett v. Commerce Trust Co., 8 Cir., 187 F.2d 242, cert. den. 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618, that Court observed;

> " * * * The Federal Constitution does not guarantee a citizen against loss through fictitious or fraudulent litigation or through erroneous decisions of State courts on questions of State law nor, as we have seen, does it guarantee uniformity of decisions on the part of State courts nor protect the citizen against the invasion of private rights by private parties." 187 F.2d pp. 248, 249

In Bottone v. Lindsley, et al., 6 Cir., 170 F.2d 705 (C.A.10, 1948), the Court observed:

> "It is conceivable that persons, either individually or acting in concert might so use the state judicial process as to deprive a person of his property without due process of law, or of equal protection of the laws, yet we are certain that to make out a cause of action under the Civil Rights Statutes, the state court proceedings must have been a complete nullity, with a purpose to deprive a person of his property without due process of law. To hold otherwise would open the door wide to every aggrieved litigant in a state court proceedings, and set the federal courts up as an arbiter of the correctness of every state decision. 'The Fourteenth Amendment did not alter the basic relations between the States and the national government.' Screws v. United States, supra, 325 U.S. at page 109, 65 S.Ct. at page 1039, 89 L.Ed. 1495, 162 A.L.R. 1330. Nor does it 'assure uniformity of decisions or immunity from merely erroneous action * * *.' See Justice Frankfurter concurring in Snowden v. Hughes, 321 U.S. 1, 15, 64 S.Ct. 397, 404, 88 L.Ed. 497. See also Moyer v. Peabody, 212 U.S. 78, 29 S.Ct. 235, 53 L.Ed. 410, supra." p. 707

Other authorities are Grubbs v. Slater, 144 F.Supp. 554 (W.D.Ky., 1955) aff'd sub nom. Grubbs v. Farnsley, 234 F.2d 666, cert. den. 352 U.S. 894, 77 S.Ct. 133, 1 L.Ed.2d 88; Sarelas v. Porikos, 320 F. 2d 827 (C.A.7, 1963), cert. den. 375 U.S. 985, 84 S.Ct. 519, 11 L.Ed.2d 473; Skolnick v. Martin, 317 F.2d 855 (C.A.7, 1963), cert. den. 375 U.S. 908, 84 S.Ct. 199, 11 L.Ed.2d 146; Skolnick v. Spolar, 317 F.2d 857 (C.A.7, 1963), cert. den. 375 U.S. 904, 84 S.Ct. 195, 11 L.Ed.2d 145; Johnson v. Stone, 268 F.2d 803 (C.A.7, 1959). See: Miles v. Armstrong, 207 F.2d 284 (C.A.7, 1953).

It was conceded during oral argument that judges were generally immune from suit in this type action. The cases adopt a distinction between excesses of jurisdiction and the known absence of any jurisdiction. Rhodes v. Houston, 202 F. Supp. 624, (D.C.Neb., 1962) quoted extensively in No. 5466. However, plaintiffs contend that the Chief Justice is subject to suit, not because he is a judge, but, because he is the adminstrative head of the Tennessee state courts.

Article 6, § 2 of the Tennessee Constitution adopted in 1870, states:

> " * * * The jurisdiction of this [Supreme] Court shall be appellate only, under such restrictions and regulations as may from time to time be prescribed by law; but it may possess such other jurisdiction as is now conferred by law on the present Supreme Court. * * * "

In Northern v. Barnes, 70 Tenn. 603, 609 (1879) the Court discussed its jurisdiction over the inferior courts.

> "While this court has no jurisdiction over the clerks of inferior courts, simply as clerks, it has jurisdiction over the inferior courts and the judges thereof, in all cases wherein it has appellate jurisdiction of the parties, and of the subject matter, and can compel the inferior court or the judge thereof to obey its mandates."

█ The plaintiffs' contention cannot be maintained. The Chief Justice acted

within his jurisdiction. Therefore, the suit against him must be dismissed.

Plaintiffs rely upon Huey v. Barloga, 277 F.Supp. 864 (N.D.Ill., 1967). In that case, the next of kin of a member of a minority group alleged that the defendants conspired to prevent the intestate's protected travel. The Court noted that there may be such a cause of action under 42 U.S.C. § 1985, 1986 or 1983, but dismissed the complaint because the pleadings were conclusory. There were no state court proceedings involved in the case.

In Brown v. Brown, 368 F.2d 992 (C.A. 9, 1966) the Court held that a prisoner had stated a cause of action against the Governor of California, a warden of a prison, and their agents.

In York v. Story, 324 F.2d 450 (C.A.9, 1963) the Court held that the chicanery of a police officer in inducing the plaintiff to disrobe, be photographed in lewd poses and the subsequent distribution of the photographs was a violation of plaintiff's constitutional right of privacy and constituted a basis for a suit within 42 U.S.C. § 1983.

In Barnes v. Merritt, 376 F.2d 8 (C.A. 5, 1967) the Court held that denial of a liquor license for geographic reasons when no such standards existed created a cause of action under 42 U.S.C. § 1983. That case did not involve any state court proceedings.

Basista v. Weir, 340 F.2d 74 (C. A.3, 1965) is the only case plaintiffs cite that involved a state court proceeding. Plaintiff alleged a false arrest and battery by a police captain. Plaintiff apparently had been convicted of assault and battery, but the record was not in evidence. In granting a directed verdict for defendant after a $1,500 jury verdict for plaintiff, the trial court used language similar to that used above by this Court. Both Bottone v. Lindsley, supra, and Johnson v. Stone, supra, were cited for the proposition that federal courts were not arbitrators of the correctness of state decisions. The Third Circuit stated that both these cases were inapposite be-

cause they "were civil actions brought in state courts and if they involved the violation of constitutional rights at all, the alleged violations were such as could have been corrected by further state court proceedings." This principle is controlling of the case under consideration.

In view of the decision reached, it is not deemed necessary to discuss the other questions raised by the respective parties.

For the reasons herein indicated and upon the cases cited, it is ordered that defendants' motions to dismiss be, and same hereby are, sustained.