Mrs. Betty POPE, Plaintiff,

v.

CITY OF ATLANTA and William A. Hewes, as Assistant Director of the Bureau of Buildings of the City of Atlanta, and Atlanta Regional Commission, Defendants,

Friends of the River, Inc., and the State of Georgia, Intervenors.

No. C76–607A.

United States District Court, N. D. Georgia, Atlanta Division.

Aug. 23, 1976.

Moreton Rolleston, Jr., Atlanta, Ga., for plaintiff.

Ralph Witt, William R. Bassett and Harvey M. Koenig, Atlanta, Ga., for Atlanta Regional Commission.

Furman Smith, Atlanta, Ga., for intervenor, Friends of the River.

Arthur K. Bolton, Atty. Gen., State of Ga., Patricia Barmeyer, Asst. Atty. Gen., State of Ga., Atlanta, Ga., for State of Ga.

## ORDER

MOYE, District Judge.

This is an action for injunctive and declaratory relief involving a constitutional challenge to the Metropolitan River Protection Act (River Act), Act Number 66, Georgia Laws 1973. Plaintiff Mrs. Betty Pope seeks to enjoin defendants city of Atlanta and the Atlanta Regional Commission (ARC) from enforcing a stop work order issued on April 2, 1976, contending that such order enforcing the River Act and halting work on the construction of a tennis court on her premises is in violation of the River Act and the Fifth and Fourteenth Amendments of the United States Constitution. She further requests that this Court declare that the River Act itself is in violation of the Fifth and Fourteenth Amendments.

This action is presently before the Court (1) on the State of Georgia's motion to intervene as a party defendant filed June 14, 1976, (2) on defendant city of Atlanta's motion to dismiss filed May 26, 1976, (3) on defendants city of Atlanta and William A. Hewes's motion to reopen evidence, and (4) for final disposition on the merits pursuant to the order issued on June 1, 1976, directing the parties to brief all pertinent issues.

## Facts

On February 17, 1976, plaintiff Betty Pope began clearing trees from her land in preparation for construction of a tennis court on her property on the banks of the Chattahoochee River in northwest Atlanta. Work proceeded on the construction, including the leveling of the property and erection of a retaining wall, until March 12, 1976. On that day, defendant Friends of the River, Inc., filed suit in Fulton County Superior Court to obtain a temporary restraining order against work on the Pope property. On the same day, plaintiff requested and received a permit for the construction of a fence around the tennis court. On March 19, 1976, defendant Hewes inspected the construction on the Pope property. Work continued on the tennis court until April 2, 1976, when the city of Atlanta threatened to bring charges against plaintiff unless construction activity ceased. A temporary injunction issued by this Court on April 6 halting all construction on the property is presently in effect.

## State of Georgia's Motion to Intervene as Party Defendant

The motion to intervene by the State of Georgia is unopposed. Accordingly, the motion is hereby ORDERED GRANTED. See Local Rule 91.2.

## William A. Hewes and City of Atlanta's Motion to Dismiss

Defendants William A. Hewes and the city of Atlanta contend that the denial of the plaintiff's application for a three-judge court indicates the lack of a substantial federal question in this action and consequently move for dismissal for lack of jurisdiction. The motion is denied. The determination by Chief Judge Brown of the Fifth Circuit Court of Appeals that a three-judge court would not be convened in the instant case does not establish that there are no substantial federal questions to be decided. Accordingly, this Court shall retain jurisdiction over the entire case.

*Defendant's Motion to Reopen Evidence*

Inasmuch as the estoppel issue to which defendant's motion was directed has been resolved against the plaintiff, defendant's motion is hereby ORDERED DENIED.

*Substantive Claims*

The plaintiff makes five arguments for the granting of the requested injunction: (1) city officials allegedly knew of the construction on her premises on February 17, 1976, and did nothing to stop such construction until March 17, 1976, and are therefore estopped from interfering with completion of the construction; (2) the River Act has been selectively enforced against plaintiff Pope; (3) the ARC has acted arbitrarily in determining that the construction on the Pope property will be harmful to the River inasmuch as no physical inspection of the site was made; (4) Pope has met the minimum requirements of the River Act; (5) the River Act is violative of the Fifth and Fourteenth Amendments. For reasons to be set forth below, the Court finds that plaintiff's contentions are not meritorious.

*Estoppel Against City of Atlanta*

The plaintiff alleges that, inasmuch as the defendant city had knowledge at all times between February 17, 1976, and March 17, 1976, that work was proceeding on the Pope property and the city did not threaten Pope with a citation until April 2, 1976, the city "encouraged" the construction and may not now interfere.

Defendants ARC and city of Atlanta assert that the plaintiff was unjustified in relying on informal opinions issued from the City Attorney's Office, that the plaintiff has no claim to equitable relief inasmuch as she failed to notify the city that construction was taking place, and that plaintiff and her counsel are charged with and in fact had full knowledge of the Georgia laws, including the River Act, which prohibit construction of the tennis court.

■ To prove estoppel, plaintiff must show that she relied on a statement or representation of the defendant or that the defendant misled the plaintiff, and that the plaintiff was induced to act on the defendant's representations. *Broussard v. Phillips Petroleum Co.,* 160 F.2d Supp. 905, 913 (W.D.La.1958), *aff'd,* 265 F.2d 221 (5th Cir. 1959); *Delaware Insurance Co. v. Pennsylvania Insurance Co.,* 126 Ga. 380, 55 S.E. 330 (1906). Plaintiff has failed to plead such reliance sufficiently:

> "Estoppel must be pleaded with particularity and certainty. . . . [N]othing can be supplied by inference or intendment, and where there is ground for inference or intendment, it will be against and not in favor of the estoppel. . . [T]he burden is on the party who sets up the estoppel to make out the facts on which it rests."

*Coen v. American Surety Co.,* 120 F.2d 393 (8th Cir. 1941). The plaintiff's claim that the city of Atlanta is estopped from enforcing its stop work order is thus not supported.

*Selective Application of the River Act*

■ To support her claim that the River Act is being selectively enforced against her, plaintiff asserts that numerous other recreational facilities have been constructed within 2000 feet of the Chattahoochee without the issuance of permits for such construction. With the exception of the Lovett School track, however, plaintiff does not allege that any of the above structures are either in the flood plain or within 150 feet of the Chattahoochee, as is her tennis court.

Defendant ARC states that the Lovett School track was a preexisting track which was merely resurfaced, and that the track contained no structure such as a fence which would impede the flow of water. Further, defendant ARC alleges that upon ARC's insistence the Lovett School modified plans to build four tennis courts in order to comply with ARC's ruling that such courts could not be built within 150 feet of the Chattahoochee.

The Court finds that plaintiff's allegations are unsupported by the facts presented. ARC and the City of Atlanta are obliged to enforce the River Act in good

faith. Defendants have shown a violation of the Act by plaintiff and are justified in preventing such violation; plaintiff has failed to show with specificity a failure to enforce the Act in other instances.

### Arbitrariness of Finding of Inconsistencies between the Chattahoochee Corridor Study and Plaintiff's Tennis Court

■ The plaintiff contends that the ARC acted arbitrarily in the following ways: (1) no member of the ARC or representative of the City of Atlanta ever visited the Pope premises; (2) at flood stage on March 16, 1976, only a portion of the tennis court was flooded; and (3) construction of the plaintiff's tennis court was in compliance with the Chattahoochee Corridor Study.

Where an agency has made findings of fact supporting a decision, a plaintiff challenging that decision carries a heavy burden:

> "Findings of fact cannot and will not be set aside if the evidence in the record reasonably supports the administrative conclusion. . . . The findings must stand unless they were wrong, and they cannot be wrong—that is, reversibly wrong—if substantial evidence supports them."

*Colonial Stores, Inc. v. FTC,* 450 F.2d 733 (5th Cir. 1971). *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 126 (1971); *Refrigerated Transport Co. v. United States,* 313 F.Supp. 880, 885 (N.D.Ga.1970).

Inasmuch as defendant ARC has shown that a visit to the premises would have served no purpose and that the proposed tennis court would sit clearly within the flood plain and within 150 feet of the river, the ARC's findings must be upheld as reasonable and not arbitrary. Further, the ARC has determined that the construction on plaintiff's property violates the second standard of the Chattahoochee Corridor Study which disallows the placement of impervious surfaces within 150 feet of the River; this finding is supported by the facts presented and is thus not arbitrary.

For the above reasons, the plaintiff's arguments that the ARC and the City of Atlanta have acted arbitrarily in finding that the construction on the plaintiff's property is in violation of the standards of the Chattahoochee Corridor Study are not meritorious.

### Constitutionality of the River Act

■ Plaintiff asserts that the River Act, both on its face and as applied, violates the Fifth and Fourteenth Amendments of the United States Constitution in that the Act's prohibition of the construction of a tennis court on a certain segment of her property is a taking of private property for public purposes without just compensation. The defendants assert the validity of the statute as a permitted exercise of the state's police power. As a preliminary matter, a distinction must be made between the state's power of eminent domain and its right to regulate under its police power. Where the property must be fully devoted to the public use, the state has exercised the power of eminent domain and the owner must be compensated. *Pumpelly v. Green Bay Co.,* 80 U.S. (13 Wall.) 166, 20 L.Ed. 557 (1871). Where certain uses of the property are prohibited in a reasonable and non-arbitrary manner by legislative regulations enacted for the public health, morals and safety, the state is not obligated to compensate the owners even in cases where a severe diminution in property values results. *Goldblatt v. Hempstead,* 369 U.S. 590, 592–93, 82 S.Ct. 987, 8 L.Ed.2d 130; *Hadacheck v. Sebastian,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915); *Mugler v. Kansas,* 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887). The River Act represents an exercise of the state's police power.

A regulation under the state's police power is presumed constitutionally valid, *Bibb v. Navaho Freight Lines,* 359 U.S. 520, 529, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959), and will not be overturned unless it is shown to be clearly unreasonable or unrelated to the community health, morals and safety. *Cusack Co. v. City of Chicago,* 242 U.S. 526, 529, 37 S.Ct. 190, 61 L.Ed. 472 (1916); *Rein-*

*man v. Little Rock,* 237 U.S. 171, 177, 35 S.Ct. 511, 59 L.Ed. 900 (1914).

Plaintiff has not alleged that the Metropolitan River Act is unreasonable or arbitrary or that its purpose is unrelated to the safety and health of the community. Such a claim could hardly be made in view of the objectives of the Act as stated by the General Assembly of Georgia:

"The purpose of this Act is to provide a flexible and practical method whereby political subdivisions in certain metropolitan areas may utilize the police power of the State consistently and in accordance with a comprehensive plan to protect the public water supplies of such political subdivisions and of the area and to prevent floods and flood damage, to control erosion, siltation and intensity of development adjacent to major streams in such areas for such purposes, and to provide for comprehensive planning for stream corridors in such areas."

Metropolitan River Protection Act, Ga.Laws 1973, p. 128, Sec. 3(b). The public health and safety are the primary goals of the Act; standards for the reasonable and non-arbitrary achievement of safe water and riverbed management are provided in the Act for affected communities.

The plaintiff cites a number of cases in which landowners were compensated for property damage resulting from government regulation. *E. g., Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); *Pumpelly v. Green Bay Co.,* 80 U.S. (13 Wall.) 166, 20 L.Ed. 557 (1871); *Morris County Land Improvement Co. v. Parsippany-Trory Hills,* 40 N.J. 539, 193 A.2d 232 (1963); *Dooley v. Town Plan & Zoning Comm'n,* 151 Conn. 304, 197 A.2d 770 (1965). The distinction between the cases cited and the instant case is that the regulations in the former rendered the property worthless or substantially worthless for *any* purpose, while plaintiff alleges no diminution in the worth of her property. The value of plaintiff's land for residence purposes is entirely undiminished; no compensable injury results from denial of a permit to build a tennis court on a *particular portion* of one's property.

The case at bar is controlled by a recent Fifth Circuit decision, *Maher v. City of New Orleans,* 516 F.2d 1051 (5th Cir. 1975). Citing the requirements established in *Goldblatt v. Hempstead, supra,* and *Mugler v. Kansas, supra,* that property be rendered substantially worthless before a state must compensate landowners affected by a regulation, the Court found that Maher, the owner of property in the French Quarter of New Orleans which he was required to preserve under a state statute, "did not show that the sale of the property was impracticable, that commercial rental could not provide a reasonable rate of return, or that other potential use of the property was foreclosed." The Court thus found that the statute was constitutional.

Because plaintiff in the instant case has alleged no taking other than that of a "right" to construct a tennis court on a certain portion of her property, this Court finds her allegations insufficient. Accordingly, plaintiff's complaint is hereby ORDERED DISMISSED WITH PREJUDICE.